FILED WITH THE
COURT SECURITY OFFICER
CSO: _____
DATE: 11/19/2010

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SALEH ABDULLA AL-OSHAN *et al.*, | : | |
| Petitioners, | : | Civil Action No.: 05-0520 (RMU) |
| v. | : | Re Document No.: 326 |
| BARACK OBAMA *et al.*, | : | |
| Respondents. | : | |

**FILED**
**DEC 1 - 2010**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART PETITIONER SHALABI'S MOTION TO COMPEL
MEDICAL AND PSYCHIATRIC VISITS

## I. INTRODUCTION

This matter is before the court on petitioner Abdul Rahman Shalabi's motion to compel the government to permit medical and psychiatric evaluations by independent physicians. The court determines that the petitioner has demonstrated that his medical and mental health conditions threaten to compromise his ability to assist counsel in prosecuting his habeas petition. Accordingly, the court grants the petitioner's request to allow independent physicians to evaluate his current medical and psychiatric status and to determine a treatment plan for the petitioner in collaboration with the Joint Medical Group staff in the Guantanamo Bay, Cuba. The court further orders the gastrointestinal specialist who evaluated the petitioner in May 2010, a military physician, to collaborate with the independent physicians in conducting their evaluations and in determining an appropriate treatment plan. The court denies, however, the petitioner's request for an order permitting independent physicians to travel to Guantanamo every six months in order to provide follow-up care.

## II. FACTUAL & PROCEDURAL BACKGROUND

The petitioner has participated in a continuous hunger strike since August 2005. Petr's Mot. at 4. Throughout his hunger strike, Guantanamo personnel have delivered the petitioner's required sustenance by forced-feedings through a nasal tube twice a day. *Id.* As a result of complications from his ongoing hunger strike, the petitioner has been hospitalized for the past eighteen months. *Id.* During this time, he has required emergency intervention on at least three occasions and, according to the petitioner, his "ongoing and severe constipation and rectal bleeding have not been fully evaluated or treated." *Id.* at 2; Petr's Supplement to Petr's Mot.

Because of the petitioner's hunger strike and consequent medical complications, this court has been forced to intervene on several occasions to ensure that the petitioner's health does not deteriorate to the point where his right to counsel is endangered. In June 2009, the court granted the petitioner's emergency motion for an independent medical and psychiatric evaluation after determining that the medical and psychiatric issues raised in the motion were sufficient to "raise[] substantial doubt as to his future ability to communicate with counsel." Mem. Op. (June 8, 2009) at 6. The following month, the court specifically ordered that Dr. Emily A. Keram, an independent psychiatrist selected by the petitioner, "be permitted to perform a comprehensive psychiatric evaluation and preliminary medical evaluation of petitioner." Order (July 14, 2009) at 2. The court, however, limited the scope of Dr. Keram's activities to those that she deemed "necessary to evaluate petitioner Shalabi's future ability to communicate with his counsel." *Id.* at 2-3.

On November 13, 2009, the court granted the petitioner's request to allow an ear, nose and throat ("ENT") specialist to evaluate the state of the petitioner's nose and throat in light of the nasal feedings and recommend alternative long-term feeding options. Order (Nov. 13, 2009).

Dr. Joseph Finley, a military ENT specialist, and Dr. Sondra Crosby, a private physician selected by the petitioner, filed a report on January 6, 2010. Notice (Jan. 6, 2010), Ex. A ("January 2010 Joint Report"). The report recommended, among other things, that the petitioner "undergo a psychiatric evaluation and monitoring, including a competency evaluation for decision making capacity." *Id.* at 6. Although the doctors concurred that there was no chronic damage to the petitioner's nose or throat from the feedings, they proposed specific changes to the petitioner's feeding plan and recommended that he receive a gastrointestinal evaluation. *Id.* at 4-6. In light of these recommendations, the doctors noted, the petitioner would require "close monitoring and ongoing reevaluation." *Id.*

In May 2010, a gastrointestinal endoscopy was performed on the petitioner by a military physician. Govt's Sealed Filing of Ex. C ¶ 2. The physician diagnosed the petitioner with gastroparesis, "a condition that indicates damage to the ... nerve that regulates the digestive system." *Id.* at ¶ 7. Due to this condition, "anything the [petitioner] consumes has the possibility of remaining in the stomach and solidifying into a mass that causes a periodic obstruction at the opening of the stomach to the small intestine." *Id.* As a result, "the stomach is unable to empty properly, causing nausea, vomiting, feelings of fullness, and abdominal pain." Petr's Mot. at 3.

The petitioner's "weight has fluctuated between approximately 100 to 104 pounds over the past six months," largely because the petitioner is "unable to tolerate larger volumes in his twice-daily feedings, and unwilling to change the frequency of his feedings or accept other treatment." *Id.* at 7. The petitioner claims that his other symptoms – including attacks of acute abdominal pain, constipation and rectal bleeding – remain undiagnosed. *Id.* The military physician concludes, however, that these symptoms are side effects of gastoparesis. Govt's Sealed Filing of Ex. C. ¶¶ 13-14, 16. Additionally, the petitioner has reported symptoms which

have resulted in "code yellow" alerts, a signal used by the Joint Medical Group to indicate "life-threatening medical conditions requiring expedited evaluation." Govt's Opp'n, Ex. B ¶ 17. Although two of these incidents occurred in March 2010, Petr's Mot. at 7, the petitioner recently collapsed to his knees and triggered a code yellow emergency on October 15, 2010. *Id.*; Petr's Supplement to Petr's Mot.

The petitioner claims that his interactions with medical staff at the Joint Medical Group throughout the past years have "tainted his ability to trust his current health care providers." Petr's Mot. at 10. For instance, during one of his forced-feedings the petitioner became convinced that his food had been poisoned because of its acidic taste; it turned out, however, that "a small quantity of vinegar was . . . left in the bowl used to mix [the petitioner's] food." *Id.* at 11. The petitioner notes that although there have been providers in whom he has placed a greater degree of confidence, "the rapid rotation of doctors in and out of Guantanamo has meant that [the petitioner] has not been able to establish a long-lasting, meaningful patient-provider relationship with any of them."[1] *Id.*

With regard to his mental health, the parties disagree as to whether the petitioner is experiencing symptoms of post-traumatic stress disorder and major depression. *Compare* Petr's Mot. at 9 *and* Govt's Opp'n at 12. Generally, however, the petitioner declines assistance from the Joint Medical Group's Behavioral Health Unit. Govt's Opp'n at 11. Additionally, it does not appear from the medical records that have been filed with the court that the petitioner has received a competency evaluation which would provide insight into his decision making capacity, as recommended in the January 2010 Joint Report.

---

[1] For instance, the Senior Medical Officer who mostly recently treated the petitioner began working in Guantanamo in April 2010 and was scheduled to depart in October 2010. Govt's Opp'n, Ex. B.

On September 10, 2010, the petitioner filed the current motion to compel the government to permit medical and psychiatric visits by Dr. Keram and Dr. Crosby. *See generally* Petr's Mot. The petitioner asks that the court

> (1) [permit these doctors] to travel to Guantanamo to assess [the petitioner's] current medical and psychiatric status, and consult with the [Joint Medical Group] staff and [the petitioner] to facilitate a treatment plan;
>
> (2) require the military gastroenterologist who performed the previous evaluations to travel to Guantanamo with Dr. Crosby in order to consult with her on further evaluations and, if necessary, perform additional procedures; and
>
> (3) permit Dr. Crosby and Dr. Keram to visit [the petitioner] at regular, six-month intervals in order to follow up on his care.

*Id.* at 3. With this motion now ripe for adjudication, the court turns to the parties' arguments and applicable legal standards.

## III. ANALYSIS

The petitioner asserts that his motion "simply seeks to ensure that the orders previously granted in this case regarding medical care are meaningful." Petr's Mot. at 14. He argues that habeas petitioners have a constitutional right to access the court which requires that they have "meaningful access to counsel." *Id.* at 14. In turn, the petitioner argues, he must be "sufficiently mentally and physically healthy to participate in his own case." *Id.* The petitioner claims that "[i]f Dr. Crosby and Dr. Keram are not allowed to travel to Guantanamo to meet with [him, then he] will likely continue to withhold consent to recommended dietary modifications, colonoscopy, and other necessary medical procedures, despite the best efforts of [the Joint Medical Group] staff and [the petitioner's] counsel to convince him otherwise." *Id.* at 16. The petitioner contends that his undiagnosed conditions, borderline starvation and constipation are all conditions that leave him "vulnerable to crisis." *Id.* Because "any physical and psychological

5
UNCLASSIFIED//FOR PUBLIC RELEASE

harm that would ensue cannot be undone by any subsequent action by the Court or Respondents[,] prevention is the only adequate relief." *Id.*

The government argues, as it has done in opposing the petitioner's previous motions, that "claims challenging conditions of confinement are not properly cognizable in habeas corpus proceedings," and are barred by § 7 of the Military Commission Act of 2006, codified at 28 U.S.C. § 2241(e)(1) and (2). Govt's Opp'n at 14. The government contends that because the petitioner "has not been deprived of access to counsel or information allowing counsel to make an informed assessment as to his medical condition, [he] does not have a legal basis for his requested relief, under the All Writs Act or otherwise." *Id.* at 19. The government rejects the petitioner's position that his "ability to participate in these proceedings and present his claims to the Court have been compromised as a result of medical issues," or that the petitioner's compliance with treatment is "akin to access and ability to communicate with counsel." *Id.* at 20-21. Indeed, the government states that the petitioner "has utterly failed to demonstrate that his access to counsel or communications with counsel have been actually harmed or will be actually harmed in the imminent future to the detriment of his case." *Id.* at 23, n.14. According to the government, the petitioner "is not seeking to preserve his relationship with counsel but to establish a long-term medical arrangement with physicians of his own choosing and beyond that provided by [the Joint Task Force]." *Id.* at 22.

In his reply, the petitioner states that his "health continues to be precarious, affecting his ability to participate in meetings with his attorneys and endangering his long-term survival." Petr's Reply at 1. More specifically, the petitioner's "low weight and overall poor health" require that the petitioner only meet with his counsel for two or three hours in a day, instead of being able to meet with them for both the morning and afternoon sessions set aside for detainee-

counsel visits. *Id.* at 5. The petitioner points out that in April 2010, he was "too ill to meet with his visiting attorneys in the camp, and requested that they be permitted to meet with him in the hospital. Counsel's request to meet with [the petitioner] in the hospital, however, was summarily denied, and counsel were unable to meet with [the petitioner]." *Id.* The petitioner further asserts that this court has already evaluated and rejected the defendant's arguments that the court lacks jurisdiction. *Id.* at 3.

As this court has previously noted, the court is tasked with ensuring that the petitioner has meaningful access to his counsel, including the ability to meaningfully communicate with them. *Bounds v. Smith*, 430 U.S. 817, 821-22 (1977). "[I]n order to properly represent [habeas] Petitioners, their counsel must have access to them, must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger." *Husayn v. Gates*, 588 F. Supp. 2d 7, 10 (D.D.C. Nov. 28, 2008) (quoting *Omar v. Harvey*, 514 F. Supp. 2d 74, 78 (D.D.C. 2007)); *see also Al-Joudi v. Bush*, 406 F. Supp. 2d 13, 21-22 (D.D.C. 2005). When a petitioner raises substantial doubt as to his future ability to communicate with counsel, courts have required that a petitioner be examined by independent physicians. *Al-Shibh v. Bush*, Civ. Action No. 06-1725 (D.D.C. Jan. 16, 2009) (Order) at 1 (granting the petitioner's request for production of medical records and an independent medical examination); *Husayn*, 588 F. Supp. 2d 7, 12 (D.D.C. Nov. 28, 2008) (granting the petitioner's request to show his medical records to and consult with an independent physician).

In this case, the petitioner's experiences over the past year have demonstrated that his ability to participate in this litigation in a meaningful way is jeopardized by his fragile mental and physical state. Meetings between the petitioner and his counsel have been cancelled due to

the petitioner's health problems and emergency hospitalization. Petr's Reply at 5. The petitioner has experienced at least three life-threatening medical emergencies as defined by the government. Govt's Opp'n, Ex. B ¶ 17; Petr's Supplement to Petr's Mot.

Additionally, the petitioner is at 71% of his ideal body weight. Petr's Reply at 6. According to Dr. Crosby's previous testimony, "at 70 percent of ideal body weight, the body begins to cannibalize its own muscle tissue for energy. This internal metabolic process is externally characterized by symptoms of abdominal pain, weakness, dizziness, and emotional withdrawal." *Id.* Such a low body weight impedes the attorney-client relationship because, as the petitioner discusses, he "experiences fatigue to the point that he cannot meet with his attorneys for longer than several hours in a day," "experiences regular abdominal pain which, at times, is so severe that it causes him to collapse to the ground," and is generally "more emotionally withdrawn and apathetic" during visits with counsel. *Id.* at 7.

Although the court lacks jurisdiction to alter the conditions of the petitioner's confinement, *see Tumani v. Obama*, 598 F. Supp. 2d 67, 69 (D.D.C. 2009) (citing *In re Guantanamo Bay Detainee Litig.*, 570 F. Supp. 2d 13, 19 (D.D.C. 2008)); *In re Guantanamo Bay Detainee Litig.*, 577 F. Supp. 2d 312, 314 (D.D.C. 2008), two of the petitioner's requests involve the petitioner's immediate health – a prerequisite condition to his ability to consult with counsel and participate in this litigation. Thus, the court grants the petitioner's request to allow Dr. Crosby and Dr. Keram to evaluate the petitioner and orders that the military gastroenterologist, who has evaluated the petitioner in the past, collaborate and consult with Dr. Crosby in her evaluation. *See Al-Shibh v. Bush*, Civ. Action No. 06-1725 (D.D.C. Jan. 16, 2009) at 1.

As for the petitioner's request that these doctors be allowed to evaluate the petitioner every six months, the court observes that it cannot predict if the petitioner's health (and,

accordingly, his access to counsel) will be in the same precarious state six months from now as it is today. Thus, the petitioner, in effect requests a permanent change to his confinement conditions untethered to his constitutional or legal rights, a change which the court cannot order. If in the future, the petitioner's circumstances warrant further evaluation, the petitioner may, at that time, request appropriate relief. Accordingly, the petitioner's motion to compel medical visits is granted in part and denied in part.

## IV. CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the petitioner's motion to compel medical and psychiatric visits. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 19th day of November, 2010.

RICARDO M. URBINA
United States District Judge